DUFORD *v.* PARLIAMENT OF THE PRUDENT PATRICIANS OF POMPEII.[1]

1. BENEFICIAL ASSOCIATIONS—OFFICERS—POWERS—EMPLOYMENT OF PROMOTERS—COMPENSATION.

> Where an officer of a beneficial association has authority to employ promoters it is within the apparent scope of his authority to agree upon their compensation.

2. SAME—CONTRACTS—ACTION—INSTRUCTIONS.

> In an action against a beneficial association for services rendered, an instruction that if the jury find that the contract was as testified to by plaintiff's witnesses they should find a verdict for plaintiff, was not objectionable as failing to state that the terms of the contract would make any difference in the verdict, since that was clearly implied.

3. SAME—MISLEADING INSTRUCTIONS.

> Where the instructions stated defendant's claim fully and fairly, an instruction that there was no material difference between defendant's claim as stated by one of its witnesses and by plaintiff's was *held* not misleading.

4. SAME—EVIDENCE—ADMISSIONS—REPORT OF MEMBERSHIP.

> Under plaintiff's claim to a certain percentage of the per capita tax levied upon members, defendant's official report of membership was admissible in evidence as an admission,

---

[1] Rehearing pending.

though it did not indicate how many were honorary members, exempt from payment of the tax, defendant having means of ascertaining the number and being entitled to show it if it desired.

5. SAME—QUESTION FOR JURY.

Plaintiff's claim being that he was entitled to commissions on the membership of defendant at the close of the year and upon June 30th, the court properly left to the jury the question, How many members were there in good standing on January 1st, and how many joined between that time and the time plaintiff stopped work under the contract ?

Error to Bay; Collins, J. Submitted February 24, 1908. (Docket No. 25.) Decided March 31, 1908.

Assumpsit by David Duford against the Parliament of the Prudent Patricians of Pompeii for services rendered. There was judgment for plaintiff, and defendant brings error. Affirmed.

*W. J. Lamson*, for appellant.

*De Vere Hall*, for appellee.

HOOKER, J. The defendant has appealed from an adverse verdict and judgment in an action of assumpsit. The action was brought to recover a balance alleged to be due upon a contract by which the defendant is charged with having become obligated to pay to the plaintiff and three others salaries and certain commissions for promoting the interests of defendant in this State. That there was a contract and that it involved both salaries and commissions is admitted, but the defendant denies that *it* promised to pay commissions, and it also denies that defendant's agent, by whom the contract was made, had authority to make a contract to pay said commission.

The defendant is a fraternal society organized under the laws of the District of Columbia. It has subordinate State bodies called "phalanxes," which in turn establish local bodies called "primaries," though these may be established by the defendant without the intervention of a phalanx.

Among the dues to be paid by primaries is the per capita tax of $1 per year to be "annually disbursed for management expenses as follows: Fifty cents to the phalanx of the jurisdiction, when one exists; but if none exist, it is to be placed in the general fund of the association; fifteen cents to the premier of the parliament for personal service; five cents to the prefect of the parliament for personal service; fifteen cents to the pronotary of the parliament for personal service; five cents to the proctor of the parliament for personal service; five cents to the purser of the parliament for personal service; and five cents to be divided in per liem for personal service for the balance of the proceres of the parliament, the provers and the patricians of the placitum."

At the time that the alleged contract was made there was no phalanx in Michigan, and at that time W. S. Linton and David Swinton, both of Saginaw, were respectively premier and pronotary, i. e., secretary. They arranged an interview at Grand Rapids with the plaintiff and three other gentlemen, viz., Gillett, Withrow, and Fuller, and at that interview the contract was made. It was oral and provided for the employment of all four as promoters, whose duty was to procure members to the order, and, we assume, establish primaries in their respective districts in this State. As compensation they were to receive $75 per month and one-fourth of one-half of the per capita tax, each. So far there seems to be no dispute, but the defendant claims that the further engagement was that a phalanx should be organized, of which the four should be officers and to which they should look for payment of their shares of the per capita tax. There is evidence that the parties met at Saginaw, and took some, if not all, steps necessary to organize the phalanx, and that stationery procured by defendant with their respective names and official titles was sent to them by Linton. It is claimed by the plaintiff that this attempt to organize a phalanx came to naught, that the phalanx never met and never received any money from any source,

and that whatever per capita taxes have been paid were paid to defendant, and this fact seems undisputed. If these things are true, there would seem to be no obstacle to the disbursement of its share of this fund by the defendant, as defendant's testimony shows that where there is no phalanx such money goes into the general fund of the supreme body. We are of the opinion that defendant had authority to make a contract to pay commissions from this source and that if the pronotary had not authority from the pandects to make a contract he might receive such authority, or his contracts might be ratified by the defendant, and we think that there was evidence in the record that would justify an inference that the contract, whatever it was, met the approval of the defendant. It is argued that if plaintiff's version is true, it was known only to the pronotary that the commission was to be paid by defendant, and that without such knowledge by other officers of the defendant there could be no ratification, but we think that this does not necessarily follow, for there is evidence that he was allowed broad powers of management, which might reasonably be found to include authority to make such a contract. There is abundant reason for saying that Swinton was authorized to employ promoters. Linton, the premier, who has express authority to do so, in the pandects, knew that Swinton made a contract with plaintiff and others, and participated in the proceedings at Saginaw. Having authority to employ a promoter, it was within the apparent scope of Swinton's authority to agree upon his compensation. We have seen that in the absence of a phalanx that portion of the per capita tax which would ordinarily go to the phalanx, would become a part of the general fund of the defendant and there is no apparent reason why this fund might not be drawn upon to pay for services, whether salaries or commissions.

The court instructed the jury that if they found a contract made at Grand Rapids, and that work was done under it, it was binding on the defendant because not

repudiated, although Swinton had not authority to make it. We need not discuss this question for we have already intimated that whichever way the contract was made it was within the scope of Swinton's authority under the undisputed facts.

It is said that under this charge the jurors were not given to understand that the terms of the contract should make any difference with their verdict. We think it is clearly implied. The judge said, in substance: If you find that the contract consummated at Grand Rapids was as testified to by plaintiff's witnesses, then you may find in plaintiff's favor.

Complaint is made of the charge wherein it states that "there is no material difference between the claim of defendant as stated by said Fuller and of plaintiff, said Gillett and Withrow, as stated by them, as to the amount due on the membership of defendant as of June 30, 1905." The witness Fuller states the difference in the following language:

"The only difference between me and these gentlemen is that I say it was on a basis of the members added during October, November and December, 1904, while they say it was on the basis of the whole membership of December 31, 1904. That is all the difference I see. And as to the membership added July, 1905, there is no difference between us."

As the court truly said, there was no material difference between those witnesses as to the June list. Counsel says:

"The error consists in stating that the defendant's claim is as stated by Mr. Fuller, which is not a fact. Also stating to the jury: 'There was no material difference between the claim of defendant and plaintiff as stated by Fuller as to the amount due June 30, 1905.'

"*First.* Because Fuller stated the money was to be paid to the phalanx and by the phalanx to them, and,

"*Second.* Because the defendant in no way claimed that if the contract was as they claimed, they would be entitled to per capita paid July 1st, 1905, as they resigned in June, 1905, and the per capita paid July 1st or due

June 30th, as they call it, would pay to January 1st, 1906.

"*Third.* The defendant at all times claimed that the per capita tax was to be paid to the phalanx as its laws required, and not to plaintiff and associates as individuals."

We are of the opinion that this statement should have misled no one. It was followed by a paragraph which set forth defendant's claim more fully, and the jury could not have understood that Fuller's testimony was a statement of defendant's claim in the case. It meant that according to Fuller's testimony defendant who called him was claiming that only members joining after October 15th were to be included in the January list. There is nothing to indicate that the judge meant that defendant's claim as to the contract was in accord with the testimony of plaintiff, Gillett and Withrow or even that of Fuller.

Counsel concede that the salaries were paid by defendant,—the amount of the commission is in dispute. The plaintiff is the assignee of Withrow and Fuller, and therefore claims to be entitled to three-eighths of the per capita tax.

Upon the theory of the plaintiff it was competent to admit defendant's official report of membership as furnishing some evidence of membership, although it might not indicate how many were honorary members said to be not chargeable with per capita tax. It was in the nature of an admission, and the defendant had the means of ascertaining how many were not chargeable with dues and could have shown the number, had it desired to do so, failing to do which it cannot complain if the jury did infer that few if any were exempt. It is true that there was evidence of the amount of per capita tax received, but we cannot say that defendant's liability was limited to taxes actually received. That depends on what the terms of the contract were, and that question was for the jury.

There was testimony that the commission " was to be paid upon the total membership in good standing at the close of the year and upon the 30th of June." Upon the

strength of this the court left to the jury the question, How many members there were in good standing on January 1st, and how many joined between that time and the time plaintiff and his associates stopped work under the contract? We cannot say that there was no evidence on this subject for there was a statement that indicated it to be about 3,900 on June 30th.

We find no difficulty in understanding the instructions relating to the amount plaintiff might recover, and while apparently the jury gave a larger verdict than the charge contemplated, it was no fault of the learned circuit judge, who made his directions upon this subject very plain. The charge was as favorable in this respect as the defendant had a right to expect, and if the verdict was too large (which we do not say), we see no opportunity for correcting it on this record.

The judgment is affirmed.

GRANT, C. J., and MOORE, CARPENTER, and McALVAY, JJ., concurred.